

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| KAREN N. STYRON, | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL  ACTION  NO.  06:03-986-HFF |
| | § | |
| UNUM PROVIDENT CORPORATION, | § | |
| Defendant. | § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

## I.    INTRODUCTION

This is an ERISA action.  The case is before this Court for review of Defendant's decision to deny Plaintiff's claim for disability payments.  Pending before the Court are Plaintiff and Defendant's memoranda in support of judgment.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.  The question before the Court today is whether Defendant abused its discretion in denying Plaintiff's claim for disability benefits.  Having carefully considered the memoranda, Plaintiff's reply, the record, and the applicable law, it is the opinion of this Court that judgment must be entered for Defendant.

## II.    FINDINGS OF FACT AND PROCEDURAL HISTORY[1]

In October of 2000, Plaintiff Karen N. Styron was employed by Potter-Shackelford Construction Company as an office manager.  Potter-Shackelford Construction Company had established and/or maintained long-term disability coverage with UNUM Life Insurance Company of America (Defendant or UNUM) for its employees' benefit.  Plaintiff was a participant of the plan.

On October 5, 2000, Plaintiff submitted a claim form for long-term disability benefits.  In this claim, Plaintiff described her first symptoms as "pain in upper right leg, then into thigh, then into right foot, swelling in feet and leg."  Plaintiff indicated that she first noticed these symptoms on August 1, 2000, and that she was unable to work due to: "I can't walk, pain in waist down to foot."  Plaintiff also indicated that the last day she worked before the disability was August 17, 2000, and that Plaintiff returned to part-time work on September 5, 2000, after being out for two weeks. (Exhibit 1, pp. 9-10.)[2]

The definition of disability contained in the plan provided:

### *HOW DOES UNUM DEFINE DISABILITY?*

You are disabled when UNUM determines that:

- You are **limited** from performing the **material and substantial duties** of your **regular occupation** due to **sickness** or **injury**; and
- You have a 20% or more loss in your **indexed monthly earnings** due to the same sickness or injury.

---

[1]This section is adopted from Defendant's Amended Memorandum of Law in Support of Motion for Judgment.  Plaintiff agrees in her Reply Memorandum that the facts are not in dispute.

[2]In any future cases that Defendant has before this Court, it shall number the record in ascending, not descending order.  Failure to do so will result in the Court's rejection of the submission.

2

> After 24 months of payments, you are disabled when UNUM determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience.

(Exhibit 1, p. 352.)

On August 31, 2000, Plaintiff's attending physician, Dr. Richard A. Rowe, issued an attending physician's statement which indicated, in part, the following:

> I saw Karen Styron in consultation at Piedmont Neurosurgery on August 31, 2000. You recall, that she is a 51 year old woman with complaints of pain radiating into her right leg. This has been a problem for her for ten years with flare ups that occur every two to three years. These flare ups last approximately one week. The patient has previously been treated for phlebitis. She states that she gets a burning sensation that radiates into her right posterior thigh and buttock. She denies any bowel or bladder incontinence. Her current flare up has lasted approximately two months. She states she is only able to work six hours a day now due to the pain in her right lower extremity. She has seen a massage therapist and states that her symptoms have improved since she began this.
>
> On physical exam, the patient is alert. Cranial nerves II through XII are intact. She has 5/5 strength in her upper and lower extremities. She is able to ambulate without difficulty and is also able to ambulate on her toes without difficulty. Her deep tendon reflexes are 2+. Sensation is intact to pinprick.
>
> I reviewed the patient's MRI scan. This shows some mild spondylitic changes. Behind the body of the sacrum there is a fluid filled area consistent with a arachnoid diverticulum or Tarlov cyst.
>
> It is my impression that the patient may be getting some irritation from her right S1 nerve root from her Tarlov cyst. There is not a good surgical solution for treatment of these. They are usually incidental findings and do not cause significant problems. As the patient is getting better, I have recommended that we wait and see how she does. I have suggested to her that she can try returning back to full days, but rather than sitting for prolonged periods, she should get up every hour and move around. This may help alleviate some of her problems. If the pain persists, I think it is reasonable to try her on

a medication that often works with chronic peripheral nerve pain. A medication such as Neurontin or Tegretol may be useful in management of this patient's symptoms. I have asked her to return to see me on an as needed basis. If her pain persist, then we can certainly see her here again.

I appreciate you referring this patient to me. If I can be of help in the future, please don't hesitate to contact me.

(Exhibit 1, pp. 27-28.)

On October 3, 2000, Plaintiff saw Dr. Bayard who issued the following statement.

I had the pleasure of seeing Mrs. Karen Styron today. Her chief complaint is some diffuse low back pain with right buttock, posterior lateral leg and calf pain times approximately six months duration. She states back in March she thought she might have had some mild superficial thrombophlebitis of the right leg. They tried routine therapy and an ultrasound of the leg showed no problems.

At that point because it was really affecting her life and it certainly sounds like a right S-1 radiculopathy, she got an MRI scan, done at Eastside, which I have reviewed with her, sagittals T-12 to the sacrum and axials L-1, 2 and then L-3 to the sacrum look very, very good except for the following fact: There is what certainly looks like a large arachnoid cyst or a Tarlov cyst for lack of a better word which is certainly surrounding the right S-1 nerve root. However, I see absolutely no neuro compression of it. She has already seen Dr. Rowe, a neurosurgeon in the Greenville area, and he has not offered her surgery and I certainly can't blame him. She has denied any weakness. No bowel, bladder, conus, or cauda equina symptomotology.

. . .

PHYSICIAN EXAMINATION: Blood pressure is 140/80, temperature is 98.6, pulse 68. She is awake and alert. 0 x 3, Glasgow coma 15. She appears to very frustrated and is in tears at times. Heart has a regular rate and rhythm without murmurs, clicks, gaps, or rubs. Chest is clear to auscultation. This is a very large lady, but I see no obvious neurocutaneous stigmata of her cervical, thoracic, or lumbar spine. Her straight leg raise is positive on the right, negative on the left. Motor exam, iliopsoas to plantar flexion are 5/5. DTR's are 2 at the patellas, 1 at the Achilles. Toes are down-going. Decreased pin-prick in the right S-1 distribution.

4

> IMPRESSION/PLAN:  I have told her I have absolutely no neurosurgical experience with these nor does my partner, Rob Flandry, who has been here for twenty years, so between the two of us that is almost thirty years.  I have told her that Dr. Rowe has prescribed a pain medicine regimen for her and I think she ought to try that.  The only thing I can think of is if that totally failed, someone could do a myelogram/CT on her.  If it did not fill and it was showing compression of the nerve root. I suppose one could attempt a heroic surgical excision of this, but I think it is absolutely fraught with complications, i.e. CSF leaks.  At this point, I think Dr. Rowe and I really are in agreement that it is there and that it may be causing some problems, but that this is certainly not an easy surgical fix and she will follow up with Dr. Rowe.

(Exhibit 1, pp. 30-31.)

On  October 6, 2000, Plaintiff's attending physician, Dr. Terrell Lecke, completed an attending physician's statement.  This attending physician's statement indicated that Plaintiff suffered from "low back pain – pain down right leg to foot (intense) / Tarlov cyst."  Dr. Lecke indicated that Plaintiff was currently taking "OxyContin, Darvocet, Neurontin."  When describing the restrictions and limitations, the doctor put "patient in intractable pain."  (Exhibit 1, pp. 5-6.)

On October 16, 2000, the President of the employer completed a job analysis form which provided that Plaintiff was occasionally required to stand, walk, balance and stoop and was continuously required to sit.  (Exhibit 1, pp. 3-4.)

On October 16, 2000, the employer issued an Employer's Statement regarding Plaintiff's claim.  This statement indicated that Plaintiff was continuing to work part-time.  (Exhibit 1, pp. 7-8.)

At some point around October 25, 2000, Defendant received a list of job duties from the employer regarding Plaintiff's occupation.  This statement listed Plaintiff's job duties as:

5

> Oversee account functions of Potter-Shakelford Construction Company, review accounts payable, payroll, human resources. Handle accounts receivable, bank deposits, monthly financial statements, payroll quarterly tax returns. Fill out sales tax reports. Insurance policy supervision. Control line of credit. Process billing and balance job cost monthly. Supervise three employees. Train new employees on Timberline accounting software.

(Exhibit 1, p. 2)

On July 22, 2002, Defendant wrote Plaintiff to inform her of the requirements under her policy of what she has to do to maintain benefit eligibility. This letter notified Plaintiff that Defendant was beginning its evaluation of Plaintiff's eligibility beyond the twenty-four (24) month regular occupation period, which ended on November 15, 2002. This letter also invited Plaintiff to submit further medical information which would support her continued claim for disability. (Exhibit 1, pp. 251-252.)

On July 24, 2002, Plaintiff completed an Education and Employment History form as requested by Defendant. This Education and Employment History showed that Plaintiff's previous job with the construction company was Office Manager. Her employment before this was as Controller of Pullium Morris Decorating Company. Her occupation prior to that job was as an Accounting Manager with GBC, Inc. The form also provided that Plaintiff has a high school diploma which she completed in 1968 and an Associates and Accounting Degree from Piedmont Technical College which she received in 1983. (Exhibit 1, pp. 256-257.)

On July 26, 2002, Defendant had a medical review performed by a registered nurse. This medical review provided, in part, the following:

> ANALYSIS:
> I will refer this back to Dr. O'Neal with the new information that has been received. The claimant's primary diagnosis appears to be a

Tarlov cyst with an S1 radiculopathy. The claimant at this point appears to have been on narcotics for some time. The current medical within the file appears to support the claimant's above diagnosis. The last R&Ls (restrictions and limitations) listed are those dated 12/5/00. I will request Dr. O'Neal to define some appropriate ones. It does not appear that this condition will improve. So there is no appropriate recovery period. The claimant's knee appears to have improved significantly and does not appear to be based on the limited physical findings a issue at this point.

Questions for this physician:
1.      Do you agree with the above as the primary diagnosis?
2.      Or is there another diagnosis?
3.      Do you feel the diagnosis is supported?
4.      Can you provide some more current R&Ls?

(Exhibit 1, pp. 258-260.)

On August 9, 2002, Defendant had Plaintiff's file reviewed by Dr. David M. O'Neal, a medical doctor who is board certified in orthopedic surgery. This medical review provided, in relevant part, the following:

This file is reviewed as requested by Christie Howell and Kathryn Gregory.

This file is reviewed with the questions:
1.      Do you agree with the above as the primary diagnosis?
2.      Is there another diagnosis?
3.      Do you feel the diagnosis is supported?
4.      Can you provide some more current R&L's?

I last reviewed this file in 12/00. At the time, the information from Dr. Shallcross was not available. That has since been provided as well as up to date information from both Dr. Shallcross and Dr. Wood.

The claimant has had consistent findings of radiculopathy with decreased sensation. Since last reviewed, she has also undergone surgery of her knee for degenerative meniscal changes and that has apparently improved. An additional MRI scan has been obtained reveals no change in the Tarlov cyst, but the erosion of the sacral

7

foramen is again shown as well as displacement of the S1 nerve root. It is noted that symptoms have not been consistent but that she has had flare-ups.

In answer to the questions posed:
1.     It would appear that the primary diagnosis is the Tarlov cyst with radiculopathy.
2.     The additional diagnosis of meniscal tear in the knee does not appear to be an issue at this time.
3.     The diagnosis is supported.
4.     As regards R&Ls, it appears that the claimant does have recurring radicular symptoms. This would produce some degree of impairment. However, realistically, it would seem that she should be able to function at the sedentary level provided accommodations were available to permit change in position as needed. She should also have restrictions from excessive bending, stooping, and twisting.

(Exhibit 1, p. 262.)

On August 19, 2002, Defendant obtained a Vocational Rehabilitation workup on Plaintiff's occupation as described. This vocational rehabilitation workup included an occupational description which set forth the occupational requirements and included a vocational rehabilitation report regarding the physical exertion level required to complete Plaintiff's occupation. This vocation rehabilitation report provided, in relevant part, the following:

VRC received the file to perform an occupational analysis to determine if the insured is totally disabled from their own occupation.

Insured is a 53 year old female with a date of disability of 8/19/2000. Insured last worked as a[n] office manager for Potter Shackleford Construction Company from 6/30/99 until 8/19/2000.

Job description in file from employer states position involves overseeing all accounting functions. Review accounts payable, payroll, human resources. Handle accounts receivable, bank deposits, monthly financial statements, payroll quarterly tax returns. Fill out sales tax reports. Insurance policy supervision. Control line of credit. Process billing and balance job cost monthly. Supervise three employees. Train new employees on Timberline accounting software.

8

Job analysis states position involves the supervision of three employees. Physical aspects of the job include occasional standing, walking, balancing and stooping. Continuously sitting. Both computer and calculator involve the use of both hands. Writing involves use of one hand. Position involves a minimum of 2 years of college or training.

Insured states on education and employment history form that she was employed as an office manager and supervised 4 people, coordinated all accounting to generate monthly financial statements, processing quarterly reports, year end financial statements and yearly audits with CPA.

This position is best described by the Dictionary of Occupational Titles (DOT) description of administrative assistant, DOT # 169.167-010. This position requires 2-4 years preparation, (SVP is level 7). It is a sedentary position that requires lifting, carrying, pushing, pulling 10# occasionally. Mostly sitting, may involve standing or walking or brief periods of time. Position requires frequent reaching, handling, fingering and frequent talking, hearing, near acuity and accommodations.

Original diagnosis at time of claim was low back pain, pain down right leg to foot, Tarlov cyst signed by Dr. Terrell Lecke 10/6/00. Medical review dated 8/9/02 states the primary diagnosis is Tarlov cyst with radiculopathy and is supported. Restrictions and limitations include "able to function at the sedentary level provided accommodations were available to permit change in position as needed. She should have restriction from excess bending, stooping and twisting.["]

It appears based on the physical exertional level of insured's occupation of sedentary and the restrictions and limitations provided by in house medical review of Sedentary level work that the insured would be capable of performing her own occupation as performed in the national economy. As insured is performing an occupation that allows for supervisory responsibilities, insured should have flexibility in her work environment allowing her to change positions from sit to stand as needed while performing her work duties.

(Exhibit 1, p. 270)

9

On September 11, 2002, Defendant had a medical review performed on the Plaintiff's file by Julie Jackson, a registered nurse. This medical review provided, in part, the following:

> The additional medical information submitted from Dr. Shallcross consisted of one note with new information. The claimant was noted to have increasing pain and weakness in the right lower extremity. She was noted to still be using a cane and questioned the use of additional assistive devices, such as a scooter. She did not want to have her medications increased at this time. To continue with MS Contin and Neurontin. Dr. Shallcross indicated that the claimant was incapable of returning to work due to medical reasons. This additional information does not appear to indicate any significant change in the claimant's condition since the prior review, only stating that her pain was getting worse but did not warrant a change in medication dosage. The R/Ls [restrictions and limitations] noted in prior physician review dated 8-9-02 appear to still be reasonable and supported. I will forward this file back to Dr. O'Neal for further review and input.
> Dr. O'Neal, does the additional medical information in the file indicate any changes in the claimant's condition since the prior review?? Have the R/Ls changed since the prior review? Thank you.

(Exhibit 1, p. 290.)

On September 27, 2002, Defendant had a medical review performed by a medical doctor, Dr. David O'Neal. This medical review provided, in part, the following:

> This file was reviewed as requested by Christie Howell and Julie Jackson.
>
> This file is reviewed with the question: Does the additional medical information in the file indicate any changes in the claimant's condition since the prior review?
>
> The medical reports in the file were reviewed along with the CRS response by Julie Jackson.
>
> I have reviewed this file on two prior occasions (12/15/00 and 8/9/02). Since my last review, the claimant has additional reports from Dr. Shallcross who indicates that the claimant is incapable of return to workplace due to medical reasons. He indicates that she

continues to use a cane for assistance and has ordered a motorized scooter for her. He notes worsening radicular pain, but that she has shown no tendency towards stumbling and has hypersensitivity in the S1 distribution as usual. No additional pain medicine was requested or offered.

In response to the question posed, the additional information does not indicate a change in the claimant's condition. It should be noted that even though this claimant apparently has symptoms from her Tarlov cyst, they are usually asymptomatic. It should also be noted that, generally speaking, an isolated S1 radiculopathy does not result in inability to ambulate or the need for motorized devices.

In my opinion, the R&Ls have not changed since the prior review.

(Exhibit 1, p. 292.)

On October 22, 2002, Defendant wrote Plaintiff to inform her that it was unable to approve benefits on her claim. This letter provided the following:

We have completed our review of your UNUM disability claim and have made a final determination regarding your benefit eligibility. We are unable to approve your claim for/or continue benefits.

According to the policy under which you are covered:

*You are disabled when UNUM determines that:*

- *you are limited from performing the material and substantial duties of your regular occupation due to sickness or injury; and*

- *you have 20% or more loss in your indexed monthly earnings due to the same sickness or injury.*

*After 24 months of payments, you are disabled when UNUM determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience.*

In order to ensure you continue to meet the above definition of disability, we referred your claim to our Clinical Consultants for review. An Orthopaedic Nurse and a Licensed Physician/Board

11

Certified in Orthopaedic Surgery reviewed your medical records. Below is a synopsis of their reviews.

Medical records reviewed:
- Fairview Family Practice, Dr. Water (7/22/99 – 6/27/02); (6/05/00 – 11/06/00 already reviewed in prior review 12/2000)
- Restrictions & Limitations per Dr. Waters (12/05/00)
- MRI of lumbar spine (2/24/01)
- Upstate Rehab, Dr. David Shallcross (12/11/00 – 4/05/02); (12/11/00 – 3/05/01 already reviewed in prior review (12/2000)
- Dr. Robert Wood, Orthopaedics (3/07/01 – 7/16/01)
- MRI (8/20/01)

The file was reviewed in a prior review dated 12/2000. At that time, the information from Dr. Shallcross was not available. Since that review, both Dr. Shallcross and Dr. Wood provided up-to-date information.

The primary diagnosis would appear to be the Tarlov cyst with radiculopathy. There have been consistent findings of radiculopathy with decreased sensation. Since the last review, surgery of the knee performed for degenerative meniscal changes. This has apparently improved and does not appear to be an issue at this time. An additional MRI scan had been obtained which reviewed no change in the Tarlov cyst, but the erosion of the sacral foramen is again shown as well as displacement of the SI nerve root. It is noted that symptoms have not been consistent, but there have been flare-ups. It does appear that there should be the ability to function at the sedentary demand level, provided accommodations were available to permit change in position as needed. There would be some restriction from excessive bending, stooping and twisting.

Based on the review of your medical records and the above-noted restrictions and limitation, your file was then transferred to our Vocational Consultant.

An Occupational Analysis was completed to determine the physical demand level of your **regular occupation** of Office Manager.

**REGULAR OCCUPATION means the occupation you are routinely performing when your disability begins. UNUM will look at your occupation as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location.**

12

This position is best described by the Dictionary of Occupational Titles (DOT) description of administrative assistant, DOT #169.167-010.  This position requires 2 – 4 years preparation; (SVP is level 7). It is a sedentary position that requires lifting, carrying, pushing, and pulling 10 pounds occasionally.  Mostly sitting may involve standing or walking for brief periods of time.   Position requires frequent reaching, handling, fingering, and frequent talking, hearing, near acuity and accommodation.

The medical records and full medical review were assessed to take into consideration the diagnosis along with the restrictions and limitations.  It was concluded that based on the physical exertion level of your occupation of sedentary and the restrictions and limitations provided by the in-house medical review of sedentary-level work, that you would be capable of performing your own occupation that allows for supervisory responsibilities.  You should also have the flexibility in your work environment to allow for change in positions from sit to stand as needed while performing the work duties.

As you may recall, we spoke on the telephone on September 9, 2002[,] regarding this medical review and the vocational assessment. Based on the completed reviews, it was determined that you did not meet the above definition of being limited from performing your regular occupation due to sickness or injury.

At this time, you stated additional medical records were available and felt we should review the new information prior to making our decision.  Therefore, we requested the additional information from your treating physician(s), Dr. Shallcross and Dr. Rowe.  We then completed another medical review to determine if the additional information would reflect any changes in your current medical condition and functional ability.   Below is a synopsis of the information reviewed.

Medical records addendum:
-Dr. Shallcross office visit note (7/2/02)
-Dr. Shallcross prescription note (9/10/02)

**Nurse's Review:**
"The additional medical information submitted from Dr. Shallcross consisted of one note with new information.  The claimant was noted to have increasing pain and weakness in the right lower extremity. She was noted to still be using a cane and questioned the use of

13

additional assistive devices, such as a scooter. She did not want to have her medication increased at this time. To continue with MS Contin and Neurontin. Dr. Shallcross indicated that the claimant was incapable of returning to work due to medical reasons. This additional information does not appear to indicate any significant change in the claimant's condition since the prior review, only stating that her pain was getting worse but did not warrant a change in medication dosage. The R/Ls noted in prior physician review dated 8-9-2 appear to still be reasonable and supported."

The file was then referred to a physician for review.

**Physician's Review:**

"I have reviewed this file on two prior occasion (12/15/00 & 8/09/02). Since my last review, the claimant has additional reports from Dr. Shallcross who indicates that she continues to use a cane for assistance and has ordered a motorized scooter for her. He notes worsening radicular pain, but that she has shown no tendency towards stumbling and has hypersensitivity in the SI distribution as usual. No additional pain medicine was requested or offered.

In response to the question posted, the additional information does not indicate a change in the claimant's condition. It should be noted that even though this claimant apparently has symptoms for her Tarlov cyst, they are usually asymptomatic. It should also be noted that, generally speaking, an isolated SI radiculopathy does not result in inability to ambulate or the need for motorized devices.

In my opinion, the R&Ls have not changed since my prior review."

Since the additional medical information did not make a noted change in your current functional ability, it has been determined that you no longer meet the definition of disability per your policy provision. Therefore, we regret that we must deny further benefits. You should have received you last benefit payment dated October 10, 2002. This check was payable through the date of October 15, 2002.

***If you have new, additional information to support your request for disability benefits, please send it to my attention at the address noted on this letterhead.***

***However, if you disagree with our determination and intend to appeal this claim decision, you must submit a written appeal. This***

14

> ***appeal must be received by us within 90 days of the date of this letter.  Your written appeal should include your comments and views of the issues, as well as any new documentation you may wish us to consider.***

(Exhibit 1, pp. 300-304.)

On November 4, 2002, Judge Henry M. Herlong, Jr. signed an Order of Dismissal with prejudice affirming the settlement by Plaintiff and Defendant with regards to all benefits up through August 21, 2002. In this settlement agreement, Defendant agreed to pay Plaintiff all benefits due under the plan through August 21, 2002.

On November 5, 2002, Plaintiff wrote Defendant to appeal the denial of her claim for long-term disability benefits.  (Exhibit 1, p. 306.)

On November 5, 2002, Dr. David L. Shallcross, Plaintiff's treating physician, issued a statement as follows:  "Mrs. Styron is totally and permanently disabled. Please call if you have any questions."  (Exhibit 1, p. 314.)

On November 15, 2002, Defendant wrote Plaintiff to acknowledge receipt of her appeal.  (Exhibit 1, p. 308.)

On November 15, 2002, Plaintiff's attorney wrote Defendant to request a copy of the formal letter and notice of denial.  (Exhibit 1, p. 315.)

On November 19, 2002, Defendant wrote Plaintiff's attorney, Rodney Brown, to acknowledge receipt of his letter dated November 15, 2002 and the letter from Dr. Shallcross dated November 5, 2002.  (Exhibit 1, p. 312.)

On November 21, 2002, Defendant wrote Plaintiff to inform her that it had determined that the previous denial of her claim for benefits was proper.  This letter provided, in relevant part, the following:

We have completed the appellate review of the termination of your Long Term Disability Benefits. After careful review of all file documentation, we regret to advise you the decision to terminate your benefits is appropriate and is upheld.

According to the provisions of Policy #014943, in regards to **HOW DOES UNUM DEFINE DISABILITY?**, it states, "You are disabled when UNUM determines that:

- You are **limited** from performing the **material and substantial duties** of your **regular occupation** due to **sickness** or **injury**; and
- You have a 20% or more loss in your **indexed monthly earnings** due to the same sickness or injury.
                                  . . .

To assist in evaluating if the restrictions and limitations given by Dr. Waters on December 5, 2000, "unable to work in any capacity" and by Dr. Shallcross on September 10, 2002, "incapable of return to the work place due to medical reasons," were reasonably supported we asked a physician Board Certified in Orthopaedic Surgery to review your medical records. The records that were reviewed included those already contained in your file along with the additional medical documentation which you submitted.


Dr. Shallcross notes worsening radicular pain and that you continue to use a cane for assistance. However, you have shown no tendency towards stumbling. He also indicates that the use of a motorized scooter may be utilized in the future. You continue with the medicines of MS Contin and Neurotin.

Based upon the information contained in your file, the diagnosis of Tralov cyst with accompanying radiculopathy is supported which would produce some degree of impairment. It is noted that your restrictions should also include excessive bending, stooping and twisting and a change in position as needed. You should be able to function a[t] the sedentary demand level.

It could not be determined that the medical documentation contained in the file supported the restrictions and limitations of your being unable to work in any capacity or incapable of returning to the work place due to medical reasons.

Based upon the above supported restrictions and limitations, and the duties of your job as outline[d in the] Job description provided by

16

your employer, an Occupational Analysis was performed to determine if you would be able to perform your occupation as an Office Manager, as it is performed in the National Economy.

The position of Office Manager is best described in the Dictionary of Occupational Titles (DOT) as that of an Administrative Assistant. It is a sedentary position that requires lifting, carrying, pushing, pulling 10 # [pounds] occasionally. Mostly sitting, may involve standing or walking for brief period of time. The position requires frequent reaching, handling fingering and frequent talking and hearing.

Based upon the physical exertional level of your occupation and the restrictions and limitations outlined above, you would be capable of performing your own occupation as performed in the national economy. Since you are performing an occupation that allows for supervisory responsibilities, you should have the flexibility in your work environment which would allow you to change positions from sit to stand as needed while performing the duties of your occupation.

We regret our determination could not be more favorable, but our decision was made based upon the information contained in your file and the policy provisions applicable to your claim. However, we would be willing to consider any additional information that you wish to provide to us such as medical records after September 2002[,] which would provide medical support of specific restrictions and limitations, etc.

Please provide any additional information for our review with[in] the next 30 days. **Any information received after December 21, 2002, will not be considered regarding this appeal.**

(Exhibit 1, p. 310-311.)

On November 25, 2002, Plaintiff's attorney wrote Defendant to submit further medical information for consideration. (Exhibit 1, p. 319.)

On December 10, 2002, Defendant wrote Plaintiff's attorney to acknowledge receipt of his letter requesting an appeal of the denial of benefits. (Exhibit 1, p. 320.)

On December 18, 2002, Defendant had a medical review performed on Plaintiff's claim by Dr. Joseph R. Thomas. Dr. Thomas, who is board certified in orthopaedic surgery, provided, in part, the following:

> Claimant's file was reviewed. The updated information does not provide any evidence of worsening impairment. It does appear that claimant has more subjective complaints and has decided to use some assistive devices to walk. There is no new evidence or neurosurgical evaluation to support loss of function. Her MRI findings are usually asymptomatic and the Tarlov cyst is not known to cause radiculopathy.
>
> There is no support for her inability to perform at the sedentary level found in the file, this would be in her occupation or any occupation. The note by pain management AP is not based on any objective information that I can find in his treatment notes.
>
> Noted in the neurosurgeon's original recommendation is that claimant rtw (return to work) with position changes as needed.

(Exhibit 1, p. 321.)

On January 6, 2003, Defendant wrote Plaintiff's attorney to inform him that it completed the review of the re-appeal of the termination of his client's benefits, and Defendant determined that such denial was appropriate. This letter provided, in part, the following:

> We have completed the appellate review of the re-appeal of the termination of Ms. Styron's Long Term Disability Benefits. After careful review of all file documentation, we regret to advise you that the decision to deny benefits is still appropriate and we have upheld it.
>
> According to the provisions of policy #0014943 in regards to HOW DOES UNUM DEFINE DISABILITY it states "You are disabled when UNUM determines that:
>
> - you are **limited** from performing **the material and substantial duties** of your **regular occupation** due to **sickness** or **injury; and**
> - you have 20% or more loss in your **indexed monthly earnings** due to the same sickness or injury.

18

**LIMITED** means what you can or cannot do.

**MATERIAL AND SUBSTANTIAL DUTIES** means duties that:

- are normally required for the performance of your regular occupation.
- Cannot be reasonably omitted or modified.

**REGULAR OCCUPATION** means the occupation you are routinely performing when your disability begins. UNUM will look at your occupation as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location.

In order to assist us in the understanding of Ms. Styron's condition we requested her file, to include previous medical documentation as well as the additional information submitted, be reviewed by a physician who is Board Certified in Orthopaedic Surgery as well as our Lead Medical Director in Orthopaedic Surgery. The conclusions of the review were, in part, it appears the primary diagnosis is Tarlov cyst with radiculopathy and the diagnosis is supported. There is a recurrence of radicular symptoms which would produce some degree of impairment. There would be some restrictions and limitations from excessive bending, stooping and twisting and provided accommodations available to permit change in position as needed.

Dr. Shallcross indicates that Ms. Styron is totally disabled and incapable of returning to the workplace due to medical reasons. He states that she uses a cane for assistance and was considering the use of an electric power scooter. He gives the diagnosis worsening radicular pain due to Tarlov Cyst and there is no further surgical consultation to be obtained.

The additional information received from Dr. Shallcross does not provide any evidence of worsening impairment. The MRI findings are usually asymptomatic and the Tarlov cyst is not known to cause radiculopathy. There is no medical documentation to support her inability to perform sedentary level at her own occupation or any occupation.

As previously noted, an Occupational Analysis was completed by a vocational consultant to determine the physical demand level of Ms. Styron's regular occupation

19

of an Office Manager.  Her position is best described by the Dictionary of Occupational Titles (DOT) description of administrative assistant and is sedentary in nature.

The DOT defines Sedentary Work Level as "exerting up to 10 pounds of force occasionally, and/or a negligible amount of force frequently to lift, carry, push, pull, or otherwise move objects, including the human body.  Sedentary work involves sitting most of the time, but may involve standing or walking for brief periods of time.  Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

We regret our determination could not be more favorable, but our decision was made based upon the information contained in Ms. Styron's file and the policy provisions applicable to her claim.

(Exhibit 1, p. 324-325.)

Plaintiff filed the instant action on March 28, 2003, requesting that the Court reverse Defendant's denial of her claim for disability benefits.  The parties subsequently filed cross memoranda in support of judgment.

III.     STANDARD OF REVIEW

In reviewing the denial of benefits by ERISA-governed plans, courts generally apply a *de novo* review.  If, however, the documents governing the plan grant the plan or the claims administrator discretion to interpret or apply the plan's terms, as in the instant case, the Court will review the decision for an abuse of discretion.  "[I]f the plan administrator's decision falls within the scope of the administrator's contractually conferred discretion, the court may review the merits of an administrator's decision only for an abuse of discretion."  *Haley v. Paul Revere Life Ins.*, 77 F.3d 84, 89 (4th Cir. 1996).

When reviewing a plan administrator's decision for abuse of discretion, the Court may consider only evidence before the plan administrator at the time of the decision. *Sheppard & Enoch Pratt Hosp. v. Travelers Ins. Co.*, 32 F.3d 120, 125 (4th Cir. 1994). The administrator's decision must stand unless unreasonable, even if the Court would have reached a different conclusion. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989); *Booth v. Wal-Mart Stores Inc. Assoc. Health and Welfare Plan*, 201 F.3d 335, 341 (4th Cir. 2000). "Under the abuse of discretion standard, the plan administrator's decision is reasonable if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Bernstein v. CapitalCare, Inc.*, 70 F.3d 783, 788 (4th Cir. 1995) (internal quotation marks and citation omitted). Substantial evidence is the quantum and quality of relevant evidence that is more than a scintilla but less than a preponderance and that "a reasoning mind would accept as sufficient to support a particular conclusion." *LeFebre v. Westinghouse Elec. Corp.*, 747 F.2d 197, 208 (4th Cir. 1984), *overruled by implication on other grounds by Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (2003); *see also United Seniors Ass'n v. Social Sec. Admin.*, 423 F.3d 397, 404 (4th Cir. 2005).

The Fourth Circuit has identified numerous factors that may be considered in the "abuse of discretion" analysis. One such factor is whether the plan administrator has a conflict of interest. *Booth*, 201 F.3d at 342-43. In this regard, when a conflict of interest exists, arising out of the fact that the plan administrator is also the plan insurer, as here, a court must "review the merits of the interpretation to determine whether it is consistent with an exercise of discretion by a fiduciary acting free of the interests that conflict with those of the beneficiaries." *Id.* (citing *Bedrick v. Travelers Ins. Co.*, 93 F.3d 149, 152 (4th Cir. 1996)). Thus, although the plan administrator's decision is still reviewed for an abuse of discretion in these circumstances, "this deference will be lessened to the

degree necessary to neutralize any untoward influence resulting from the conflict." *Ellis v. Metropolitan Life Ins. Co.*, 126 F.3d 228, 233 (4th Cir. 1997).

## IV.    DISCUSSION AND CONCLUSIONS OF LAW

   A.    *Regular occupation*

The plan provides, in relevant part, that a participant is "disabled when [Defendant] determines that . . . [Plaintiff is] limited from performing the material and substantial duties of [her] regular occupation due to sickness or injury. (Exhibit 1, p. 352.) In the case at bar, the Court employs an abuse of discretion standard in its review of Defendant's denial of Plaintiff's disability benefits, "lessened to the degree necessary to neutralize any untoward influence resulting from [Defendant's] conflict." *Ellis*, 126 F.3d at 233.[3] Therefore, the first question before the Court is whether Defendant abused its discretion in denying Plaintiff's claim for disability benefits through the end of the "regular occupation" period. Since the Court finds that Defendant's decision was based on a deliberate and principled reasoning process, and that the decision was supported by substantial evidence, the Court is of the opinion that Defendant did not abuse its discretion as to this decision.

   1.    *whether Defendant's decision was the result of a deliberate and principled reasoning process*

As to whether Defendant's determination to deny Plaintiff's disability claim benefits during the regular occupation period resulted from a process that was deliberate and principled, the Court answers in the affirmative. From the record before it, the Court observes that, among other things,

---

[3]For purposes of this opinion, however, the Court will still refer to this as an abuse of discretion standard.

Defendant's decision-making procedure included a sincere and exhaustive consideration of all the evidence before it. As set forth in detail in Section II of this opinion, Defendant examined all medical evidence that Plaintiff submitted, considered Plaintiff's vocational abilities, sought an independent evaluation of the medical evidence, and weighed the conditions that Plaintiff claimed contributed to her disability. Moreover, Defendant kept Plaintiff apprised of the status of her claim throughout the review, notifying her of its decision at each step of the review and appellate process.

Thus, having found that Defendant's decision to deny Plaintiff's claim for benefits was the result of a deliberate and  principled reasoning process, the Court next turns to the question of whether the decision is supported by substantial evidence. The Court finds that it is.

2.     *whether Defendant's decision was supported by substantial evidence*

Defendant contends that Plaintiff's own treating physician's reports fail to support restrictions and limitations that would prevent Plaintiff from performing her regular occupation. The Court agrees. The Court is puzzled, however, by Defendant's first argument in this regard.

According to Defendant, Dr. Waters' July 27, 2002, statement that he did not think that Plaintiff would be returning to work in any capacity was based on "vague, at best, terms of 'chronic pain condition' and 'other long term chronic medical problems.'" (Def's Mem. 22 (citing Exhibit 1, p. 222).) From the Court's review of the record, however, it seems obvious that the terms "chronic pain condition" and "other long term chronic medical problems" refer specifically to the second and third sentence in the July 27, 2002, statement. "[Since May 1999, Plaintiff has] had adult onset diabetes, hypertension, allergies, leg pain and anxiety. The chronic leg pain on the right led us to a work up which ultimately led to a diagnosis of a Tarlovs cyst which has been the main problem with her over the last couple of years." *Id*. Even with this apparent mis-characterization

23

by Defendant, however, and as set forth herein, the Court is still convinced that there is substantial

evidence to support Defendant's decision to deny Plaintiff's claim.   Moreover, it is Plaintiff's

responsibility to establish her disability.  *Gable v. Sweetheart Cup Co. Inc.*, 35 F.3d 851, 855-56 (4th

Cir.1994).  Her failure to do so is fatal to her claim.

Defendant next argues that the November 5, 2002, statement by Dr. Shallcross that

"[Plaintiff] is totally and permanently disabled[,]" (Exhibit 1, p. 314), "was not supported by the

medical evidence in Plaintiff's file, and was not supported by any objective findings. . . ." The Court

agrees.

Defendant maintains that, based on the objective medical evidence, Plaintiff did not have

restrictions and limitations that would prevent her from performing a sedentary occupation.   In

support of this position, Defendant points out that, according to a medical review performed by a

registered nurse, "[Plaintiff's] knee appears to have improved significantly and does not appear to

be based on the limited physical findings at issue at this point."  (Exhibit 1, p. 258.)[4]

Defendant also claims that Dr. David O'Neal, board certified in Orthopaedic Surgery,

performed a medical review on August 9, 2002.  After the review, Dr. O'Neal noted that "symptoms

have not been consistent but that she has had flare ups."  (Exhibit 1, p. 262.)  Dr. O'Neal also found

that the previous diagnosis of meniscal tear in the knee "does not appear to be an issue at this time."

According to Defendant, although Dr. O'Neal found that Plaintiff had "some degree of impairment"

related to the recurring radicular symptoms, he commented that "she should be able to function at

---

[4]In commenting on Plaintiff's primary diagnosis, a Tarlov cyst with an S1 radiculopathy,
however, the nurse stated the following: "It does not appear that this condition will improve.  So
there is no appropriate recovery period."  *Id*.  Even though the condition will not improve, it is
the opinion of this Court that there is still substantial evidence in the record to support
Defendant's contention that Plaintiff is not disabled under the terms of the plan.

the sedentary demand level provided accommodations were available to permit change in position as needed. She should have restriction from excessive bending, stooping, and twisting." (Exhibit 1, p. 262.) The Court finds the evidence set forth above persuasive in establishing that there Defendant had substantial evidence to support its decision.

Dr. O'Neal performed another medical review on September 27, 2002, and discussed the opinion of Dr. Shallcross. Dr. O'Neal stated that "generally speaking, an isolated SI radiculopathy does not result in inability to ambulate or the need for motorized devices." (Exhibit 1, p. 292.)

Defendant conducted another medical review on December 18, 2002, by Dr. Joseph R. Thomas, who is board certified in Orthopaedic Surgery. Dr. Thomas stated that there is no evidence of "worsening impairment," Plaintiff has "more subjective complaints," and that there is "no new evidence or neurosurgical evaluation to support loss of function." Dr. Thomas also stated that there is "no support for her inability to perform at the sedentary level" and specifically pointed out that the neurosurgeon's original recommendation was that Plaintiff return to her work with position changes as needed. (Exhibit 1, p. 321.) The Court finds these opinions to constitute substantial evidence, as well.

Defendant also had its vocational rehabilitation consultants perform a vocational rehabilitation review on Plaintiff's claim. The reviewer found that Plaintiff's job is best described by the Dictionary of Occupational Titles (DOT) description of administrative assistant, a sedentary position.

Defendant contends that the fact that Plaintiff's former occupation with her employer carried some amount of a supervisory role provides support for their argument that Plaintiff would have flexibility in her work environment which would allow her to change positions from time to time as

needed while performing her work duties, as found necessary according to Dr. O'Neal.  This is in direct contradiction, however, to Plaintiff's employer who stated that Plaintiff could not perform her job by alternating sitting and standing, her job could not be modified to accommodate the disability, either temporarily or permanently, and that it was impossible to offer Plaintiff assistance in doing her job.  (Exhibit 1, p. 3.)  Therefore, the Court disagrees with any argument by Defendant that Plaintiff was able to perform her regular occupation with her employer.

Unfortunately for Plaintiff, however, as set forth in the plan, Defendant defines disability, in relevant part, as one who is "limited from performing the material and substantial duties of your regular occupation. . . . REGULAR OCCUPATION means the occupation you are routinely performing when the disability begins. [Defendant] will look at your occupation as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location."  (Exhibit 1, p. 352.)  Stated differently, Defendant reasonably interprets the plan to state that disability is based on whether Plaintiff can perform her regular occupation as it is performed in the national economy, and not specifically whether or not Plaintiff can perform her actual job.  Having reviewed the DOT description of an administrative assistant, and the record before it, the Court is of the opinion that Defendant's decision that Plaintiff was able to perform her regular occupation is reasonable, as defined by the plan.  Moreover, pursuant to the standard set forth above and the terms of the plan, Plaintiff has failed to establish otherwise.  Accordingly, the Court cannot find that Defendant's decision to deny Plaintiff's disability benefits during the regular occupation period was an abuse of discretion.

The Court notes that were this case before it under a *de novo* review, the outcome might be different.  Under an abuse of discretion standard, however, it is not the province of this Court to

26

reweigh the evidence before it, or to substitute its judgment for that of Defendant.  Thus, since the Court finds that Defendant did not abuse its discretion, it will enter judgment for Defendant as to Defendant's determination that Plaintiff was able to perform the duties of her regular occupation.

   B.     *Any occupation*

   The plan also provides, in relevant part, that, "[a]fter 24 months of payments, [the participant is] disabled when [Defendant] determines that due to the same sickness or injury [that claimant is granted disability during the first 24 months for, the participant is] unable to perform the duties of any gainful occupation for which [she is] reasonably fitted by education, training or experience." (Exhibit 1, p. 352.)  The next question before the Court, then, is whether Defendant abused its discretion in finding that Plaintiff is not disabled from any occupation.  The Court is of the opinion that it did not.

   Simply stated, on the same bases that the Court finds that Defendant's decision that Plaintiff could perform her regular occupation was not an abuse of discretion, the Court also finds Defendant's determination that Plaintiff could perform any occupation was not an abuse of discretion.  Therefore, the Court will enter judgment accordingly.

   C.     *The* Booth *factors*

   In deciding this case, the Court has given due consideration to, among other things,

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decision making process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

*Booth*, 201 F.3d at 342-43.  The Court will briefly address each of these factors below.

The purpose of the plan is to "provide[ ] financial protection for [the participant] by paying a portion of [her] income while [she is] disabled." (Exhibit 1, p. 364.) Since Plaintiff is not disabled according to the terms of the plan, as reasonably determined by Defendant, the Court finds that the first two factors weigh in favor of Defendant. The third and fifth factors are discussed at length in Section IV.A.1. of this opinion.

From its review of the record, the Court is unable to find that Defendant's interpretation was inconsistent with other provisions in the plan or that Defendant's interpretation was inconsistent with the procedural and substantive requirements of ERISA.[5] Therefore, the Court finds that these factors weigh in favor of Defendant, as well.

Since a conflict of interest exists here, however, arising out of the fact that the plan administrator is also the plan insurer, the Court has reviewed the merits of Defendant's interpretation to decide whether that interpretation is consistent with an exercise of discretion by a fiduciary acting free of the interests that conflict with Plaintiff. *Booth*, 201 F.3d at 342-43 (citation omitted). Thus, and as already noted, although Defendant's decision has been reviewed for an abuse of discretion, that deference has been lessened so as "to neutralize any untoward influence resulting from the conflict." *Ellis*, 126 F.3d at 233. Nevertheless, even under this modified abuse of discretion standard, the Court still finds no abuse of discretion by Defendant in its denial of Plaintiff's claim for benefits.

D.      *Other arguments*

The Court has considered and rejected all other arguments set forth by Plaintiff.

---

[5]There is nothing in the record on which the Court can reasonably consider whether the provisions at issue have been applied inconsistently.

## V.     CONCLUSION

In the instant case, this Court's review has been limited to whether Defendant abused its discretion in denying Plaintiff benefits, not whether the Court would have reached the same conclusion as did Defendant. In fact, were the Court reviewing this record *de novo*, the result might not be the same as it is here today. Nevertheless, the Court holds that 1) Defendant's decision was the result of a deliberate, principled reasoning process and 2) there is substantial evidence in the record to support Defendant's decision to deny Plaintiff's claim. Moreover, Plaintiff has failed to establish that she is disabled under the terms of the plan. Consequently, the Court is unable to find that Defendant abused its discretion, as that term in defined in Section III of this opinion . Therefore, in light of the foregoing discussion and analysis, it is the opinion of this Court that judgment must be entered for Defendant.

**IT IS SO ORDERED**.

Signed this 3rd day of March, 2006, in Spartanburg, South Carolina.

s/ Henry F. Floyd
HENRY F. FLOYD
UNITED STATES DISTRICT JUDGE